David S. Gingras, #021097
**Gingras Law Office, PLLC**
4802 E. Ray Road, #23-271
Phoenix, AZ 85044
Tel.: (480) 264-1400
Fax: (480) 248-3196
David@GingrasLaw.com

Attorney for Defendant Dirty World, LLC

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| John Laake a/k/a Winter Laake,<br><br>  Plaintiff,<br><br>  v.<br><br>Dirty World, LLC d/b/a TheDirty.com and John Doe,<br><br>  Defendants. | Case No. 19-cv-5444-DMF<br><br>**REPLY IN SUPPORT OF DEFENDANT DIRTY WORLD, LLC'S MOTION TO DISMISS** |

Even in the best of times, the practice of law and the rules of litigation can be daunting for even the smartest non-lawyers. The problem is worse in specialized areas such as cases implicating the First Amendment or obscure federal statutes like the Communications Decency Act. Attempting to decipher the law in these areas may be nearly impossible for anyone unfamiliar with the subject matter. To be fair, even experienced attorneys sometimes struggle to understand and/or follow the law and rules in these areas.

For someone familiar with this stuff, the issues raised by Dirty World's Motion to Dismiss are not terribly complicated. However, it is important to acknowledge that Mr. Laake is not a lawyer. He is proceeding *pro se* without counsel. For that reason, this Reply will attempt (probably unsuccessfully) to explain the issues in slightly less technical terms in order to help Mr. Laake understand Dirty World's position.

## I.     INTRODUCTION

As a starting point, it should be noted Dirty World's motion was brought pursuant to Rule 12(b)(6) of the federal rules of civil procedure. Why does this matter? It matters because Rule 12(b)(6) motions are subject to some special limitations that control what the Court can, and cannot, consider.

In plain English, a Rule 12(b)(6) motion does not ask the Court to look at the facts or consider any evidence. Indeed, Rule 12(d) actually says that a Court generally *cannot* consider "matters outside the pleadings" when deciding this type of motion.

When a Rule 12(b)(6) motion is brought, the Court is limited (with few exceptions) to one thing—the Complaint. The Court is also required to assume all *well-pleaded* facts in the Complaint are true (even if the facts are not true). In this context, the term "well-pleaded" has a special meaning, albeit one that is not always easy to explain.

Rather than providing a checklist of what is needed to qualify as a well-pleaded fact (which is almost impossible since this will vary from case-to-case), Courts typically find it easier to describe the problem from the opposite direction; by explaining what is *not* a well-pleaded fact. As explained in one of the most-cited U.S. Supreme Court cases:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed.2004) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

Why does this matter here? It matters for several reasons. First, Mr. Laake appears to argue that Dirty World's Motion to Dismiss is somehow lacking because it fails to answer the question of *who* "initiated the libelous posting against Plaintiff Laake under the pseudonym, THE DIRTY ARMY?" Resp. at 3:19–20. Mr. Laake even asserts that Dirty World's motion "must fail because it does not even address" this issue.

The problem with this argument is that Mr. Laake fails to understand the limited context of a Rule 12(b)(6) motion. At this stage, Dirty World <u>cannot</u> ask the Court to terminate the action based on the *evidence* (because that type of request would need to be made in a Motion for Summary Judgment under Rule 56, not a Motion to Dismiss under Rule 12). Solely because of this limitation, Dirty World cannot answer Mr. Laake's question at this stage; i.e., Dirty World's Motion to Dismiss could not offer evidence showing who the author of the post is (even though such evidence exists), because this would require the Court to consider matters outside the Complaint.

Instead of seeking summary judgment which would allow the Court to consider evidence, Dirty World is seeking dismissal under the narrow standards of Rule 12(b)(6). In this situation, the Court cannot consider evidence outside the pleadings, so it would not be appropriate for Dirty World to introduce any evidence or factual matters outside the four corners of Mr. Laake's Complaint. Thus, Mr. Laake should not view Dirty World's "failure" to address this point as any sort of admission. Instead, Dirty World is simply arguing that Mr. Laake's Complaint fails to contain sufficient well-pleaded facts showing that Dirty World is liable and that it is not protected by the CDA.

This leads to the central problem with Mr. Laake's argument: Mr. Laake asks the Court to conclude that Dirty World is not protected by the Communications Decency Act for one reason—because Mr. Laake claims that he found a Facebook page associated with TheDirty.com which uses the phrase "TheDirtyArmy". Because the allegedly defamatory post giving rise to this action begins with an introduction that uses this same phrase (THE DIRTY ARMY), Mr. Laake asserts this is plausible proof showing Dirty World, LLC is, in fact, the author of the post in question.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

This argument fails for many reasons. First, Mr. Laake's claim that the post was authored by Dirty World, LLC and not by a third party directly contradicts the factual allegations in the First Amended Complaint which allege the actionable content was written by a third party, not Dirty World.

Second, as was already explained in Dirty World's motion, under the controlling Ninth Circuit standards, a Plaintiff cannot avoid the "robust" protection of the CDA by simply making a "bare" allegation that a website operator created actionable speech. This type of allegation is not plausible on its face, and thus is insufficient as a matter of law to overcome the CDA's strong protection.

Third, the same issue relating to "The Dirty Army" was already discussed and explained at some length in *Jones v. Dirty World Ent. Recordings, LLC*, 755 F.3d 398, 402–03 (6th Cir. 2014) (finding Dirty World, LLC entitled to CDA immunity, and noting, third party users of TheDirty.com "colloquially refer to themselves as 'The Dirty Army' … Submissions appear on the website as though they were authored by a single, anonymous author—'THE DIRTY ARMY.' This eponymous introduction is automatically added to every post … .")

In short, given the specific facts contained in the Complaint and the controlling legal standards for avoiding CDA immunity, Mr. Laake has not offered sufficient facts to plead a viable claim against Dirty World.[1] Absent such facts, Dirty World is presumptively entitled to protection under the CDA and Mr. Laake's Complaint must be dismissed as to Dirty World.

## II.  DISCUSSION

### a. Mr. Laake's Argument Contradicts The First Amended Complaint

The rule for 12(b)(6) motions is simple: "When deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto." *Spears v. Arizona Bd. of Regents*, 409 F. Supp. 3d 779, 784 (D. Ariz. 2019) (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)). Of

---

[1] Dirty World takes no position as to Mr. Laake's claims against John Doe.

course, the Court must assume the well-pleaded facts in the Complaint are true, but "the Court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations." *Spears*, 409 F.Supp.3d at 784 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

Here, the primary argument asserted in Dirty World's motion is that it is entitled to protection under the CDA. This argument is based on the fact that Mr. Laake's Complaint alleges the actionable material was created by a third party (sued as "John Doe") and that Dirty World is liable for merely *publishing* Doe's speech and/or for "allowing" Doe to use TheDirty.com to publish the speech.  Specifically, FAC ¶ 4 alleges that TheDirty.com "is a user-submitted gossip website" which "encourages users to upload their own 'dirt' …." Next, FAC ¶ 6 alleges "JOHN DOE" is an anonymous user of TheDirty.com who uploaded the actionable speech under the pseudonym "psychic vampire slayer". Finally, FAC ¶ 16 asserts "The Dirty" (apparently referring to Dirty World, LLC) "is made part of this lawsuit for hosting a website that they ***know*** libels people. The Dirty allows it to go on. They created the platform. They created the problem." (emphasis in original).

Dirty World's motion explained that even assuming these allegations are true, they are insufficient to state a claim against Dirty World. This is so because Mr. Laake's allegations fall squarely within the scope of CDA protection for the same reasons described in *Jones v. Dirty World Ent. Recordings, LLC*, 755 F.3d 398 (6th Cir. 2014) and *S.C. v. Dirty World, LLC*, 2012 WL 3335284, *4 (W.D.Mo. 2012) (concluding, "In sum, a third party unilaterally created and submitted the [actionable] Post without specific instructions or requests from the Defendants to do so. This is precisely the type of situation that warrants CDA immunity.")

Now, in his opposition to Dirty World's motion, Mr. Laake argues Dirty World is not entitled to CDA protection because the speech in question was actually created by Dirty World, not by John Doe. Putting aside the fact this argument directly contracts the factual allegations in FAC ¶ 6, Mr. Laake reaches this conclusion because he claims to

have found a Facebook page associated with TheDirty.com which uses the phrase "TheDirtyArmy". Because the same phrase was used at the beginning of the actionable post, Mr. Laake concludes "it is evident that Dirty World **is** THE DIRTY ARMY." Opp. at 3 (emphasis in original).

This argument warrants a few brief comments. First, a plaintiff cannot avoid a Rule 12(b)(6) dismissal by raising arguments in his opposition brief that conflict with the Complaint's factual allegations. Here, Mr. Laake's Complaint clearly alleges the speech in question was authored by a third party identified as "JOHN DOE". Mr. Laake cannot now change his position and assert a different factual argument in his opposition brief.

Indeed, virtually the same thing occurred in *Ayyadurai v. Floor64, Inc.*, 270 F.Supp.3d 343 (D.Mass. 2017). That case involved defamation and related claims brought against a website owner and others. Among other things, the defendants moved to dismiss based on CDA immunity, arguing (as Dirty World does here) that the allegedly defamatory content originated with a third party.

Like Mr. Laake, the plaintiff in *Ayyadurai* opposed the Motion to Dismiss by arguing the allegedly actionably comments (posted by an anonymous user), "may have been" written by one of the individual defendants, not a third party. The district court found this argument (presented for the first time in the plaintiff's opposition papers) was not sufficient to defeat CDA immunity:

> Plaintiff suggests that the comments, which were posted by an anonymous user, <u>may have been posted</u> by [defendant] Beadon himself. However, the bare allegation that "it is certainly possible" that Beadon authored the comment is insufficient, <u>particularly when presented as an argument in opposition papers rather than in the complaint itself</u>.

*Ayyadurai*, 270 F.Supp.3d at 368 n.12 (emphasis added) (internal citations omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully.")).

At the end of the day, Mr. Laake's Amended Complaint clearly alleges that the actionable speech was written by an unknown third party identified as "JOHN DOE". Mr. Laake claims Dirty World is liable merely for "publishing" this speech and for creating the website where Doe submitted this speech. Yet this is exactly the type of situation where CDA immunity applies. *See Shiamili v. Real Estate Grp. of New York, Inc.*, 17 N.Y.3d 281, 290–91, 952 N.E.2d 1011, 1018 (N.Y. 2011) ("Creating an open forum for third parties to post content—including negative commentary—is at the core of what section 230 protects.")

It is simply not permissible for Mr. Laake to attempt to avoid dismissal by changing his story and alleging that Dirty World is, in fact, the author of the speech in question. This argument directly conflicts with the factual allegations in the Complaint and thus it cannot serve as a basis to deny Dirty World's motion.

### b. Bare/Unsupported Allegations Of Authorship Are Not Sufficient

Obviously, Dirty World maintains that because Mr. Laake's Amended Complaint does not directly accuse Dirty World of creating the actionable speech, that hypothetical situation (where the Complaint does contain such an allegation) is not properly before the Court. In other words, the Court must resolve Dirty World's motion based what the Complaint actually alleges, not what Mr. Laake claims he meant to say.

However, what if the Complaint actually did contain a specific allegation asserting that Dirty World was the author of the speech? Would that change the outcome? The answer is no, it would not; the Complaint would still be subject to dismissal.

This is so because as explained in Dirty World's Motion to Dismiss, the Ninth Circuit has interpreted the CDA in a way that directly affects the pleading requirements in cases like this one where a website operator is sued for publishing defamatory speech which, on its face, originated from an anonymous source.  In short, the Ninth Circuit has determined in this context, the "robust" immunity provisions of the CDA require plaintiffs to offer clear, specific, and *plausible* facts showing that the website operator itself, and not a third party, created the actionable speech. A bare unsupported allegation

that the website operator created the content is <u>not</u> sufficient to meet this requirement. *See Kimzey v. Yelp!, Inc.*, 836 F.3d 1263, 1268–69 (9th Cir. 2016).

Put differently, the CDA's immunity provisions are intended "to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008). Of course, when ruling on a 12(b)(6) Motion to Dismiss, Courts must generally assume the well-pleaded facts in the Complaint are true, even if they are not.

This reality means an unscrupulous plaintiff could easily defeat an early Motion to Dismiss (thus forcing the defendant to face months or years of costly discovery) simply by including a bare allegation in a Complaint accusing the website operator of creating the actionable speech. In *Kimzey*, the Ninth Circuit expressly held that such a result would be contrary to the CDA's intended purpose of shielding website owners from crippling litigation costs.

For that reason, bare allegations against a website operator are not sufficient to overcome CDA protection: "threadbare allegations of fabrication of statements are implausible on their face and are insufficient to avoid immunity under the CDA." *Kimzey*, 836 F.3d at 1268. In other words, "the immunity in the CDA is broad enough to require plaintiffs alleging such a theory <u>to state the facts plausibly suggesting the defendant fabricated content under a third party's identity</u>." *Id*. at 1269. When such facts are absent, dismissal based on CDA immunity is required. *See id*.

To summarize: Mr. Laake's Complaint does not allege that Dirty World authored the defamatory statements at issue. But even if it did, a bare allegation of this type would not be sufficient to overcome immunity. Instead, Mr. Laake would need to plead facts that offered some plausible basis to show: 1.) that Dirty World itself created or developed the actionable content, and 2.) that Mr. Laake has personal knowledge of the facts supporting this conclusion (i.e., Mr. Laake is not merely guessing or speculating about this point; he has some reasonable factual basis to support his allegations).

8

1  Here, Mr. Laake's Amended Complaint is devoid of any such facts, plausible or
2  otherwise. For that reason, the Complaint is subject to dismissal for the same reasons as
3  discussed in *Kimzey*.

### c. Mr. Laake's Assumptions Re: "The Dirty Army" Are Unwarranted

The final point worth mentioning is this: Mr. Laake argues that because TheDirty.com's Facebook page contains a reference to "The Dirty Army", this means that Dirty World, LLC must be the author of every post appearing on TheDirty.com. This is so because every post on TheDirty.com begins with the same introduction which reads: "THE DIRTY ARMY:".

As a factual matter, Dirty World does not dispute the fact that a Facebook page exists located at: https://www.facebook.com/TheDirtyArmy/, and that this page includes the phrase "TheDirtyArmy". But this fact does not support Mr. Laake's conclusion that Dirty World, LLC must be responsible for the creation of every post appearing on TheDirty.com (because all posts include the same introductory phrase).



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

1    Again, this same issue was discussed in the Sixth Circuit's decision in *Jones*. In
2    that case, just like this one, the allegedly defamatory posts included the same introduction
3    which read: "THE DIRTY ARMY:". The Court explained this phrase was automatically
4    added to all posts appearing on the site because *users* of the site "colloquially refer to
5    themselves as 'The Dirty Army' … ." *Jones*, 755 F.3d at 402. Thus, the inclusion of the
6    words "THE DIRTY ARMY" simply indicates that the post in question originated with a
7    third party user of the site, rather than an in-house employee of the site.

    This point simply does not support Mr. Laake's position. It is extremely common for loosely associated groups of individuals to adopt collective names as a way of bonding with like-minded folks. For example, fans of the popular reality TV shows *The Bachelor* and *The Bachelorette* often refer to themselves as "Bachelor Nation", and the producers of those shows use the same phrase as a sort of trademark to describe any fans of the show. *See*, *e.g.*: https://bachelornation.com/.

    Similarly, fans of the current President of the United States sometimes describe themselves as members of the "Trump Train", *see* http://www.trumptrain.com/, and obviously some pro-Trump supporters use hashtags such as #MAGA as a shorthand way of expressing their support for the President. But just because a person chooses to post something on the Internet using the words "Trump Train" or #MAGA does not mean that Donald Trump is personally responsible for that speech.

    The same is true here. Since the site was founded more than a decade ago, fans of TheDirty.com have described themselves as members of "The Dirty Army", and posts appearing on TheDirty.com include that introductory phrase as a way of indicating that the post originated with a *user* of the site, not with the site itself. To the extent Mr. Laake has formed a different conclusion or assumption about what he *thinks* the phrase means, this is (with all due respect) simply an "unwarranted inference" that is not sufficient to deny Dirty World's motion; "unwarranted inferences are not sufficient to defeat a motion to dismiss." *Goss v. Bonner*, 2020 WL 1479131, at *2 (D. Ariz. Mar. 26, 2020) (citing *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

### III. CONCLUSION

For all the reasons stated above, Dirty World's motion should be granted.

RESPECTFULLY SUBMITTED: April 2, 2020.

**GINGRAS LAW OFFICE, PLLC**

_/s/ David S. Gingras_
David S. Gingras, Esq.
Attorney for Defendant Dirty World, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document on April 2, 2020 via the Court's ECF system, thereby causing a true copy of said document to be served electronically upon each other party registered through ECF.

