JOHN LAAKE
Pro Se Plaintiff
469 Grand Ave.
Aurora, IL 60506
Telephone: (708) 352-0424

```
  ____ FILED      ____ LODGED
  ____ RECEIVED   ____ COPY

        APR 2 3 2020

  CLERK U S DISTRICT COURT
    DISTRICT OF ARIZONA
  BY_____ DEPUTY
```

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

JOHN LAAKE,

Plaintiff,

v.

DIRTY WORLD, LLC and
JOHN DOE,

Defendants.

No. 2:19-cv-05444-PHX-DMF

**PLAINTIFF'S MOTION FOR RELIEF
FROM A JUDGMENT /
RESERVATION OF RIGHTS**

(Assigned to Honorable Deborah M. Fine)

**(On Written Submission)**

NOW COMES the Plaintiff JOHN LAAKE, Pro Se, and respectfully brings this Motion

for Relief pursuant to Federal Rule of Civil Procedure 60(b). The Plaintiff **objects** to this court's

Order of April 14, 2020 wherein Dirty World was dismissed with prejudice as a Defendant. The

Plaintiff respectfully requests this court to repeal its decision. That judgment was in error and an

oversight for the following reasons set forth below.

### I.    RESERVATION OF RIGHTS

The Plaintiff furthermore hereby asserts his reservation of rights to appeal this matter to the

higher court pertaining to Dirty World being a Defendant regarding libel and defamation.

## II.   **ARGUMENT**

Plaintiff asserts that Dirty World ought to be reinstated as a Defendant herein. Courts may reverse a decision rendered if shown good reason, as specified pursuant to Fed. R. Civ. P. 60(b) which states:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or otherwise vacated, or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

(Fed. R. Civ. P. 60(b)).

Plaintiff John Laake brings forth good reasons herein which justifies relief and reversal of the April 14, 2020 order eliminating Dirty World as a Defendant in this case.

The Dirty World is a website, **not a carrier,** as referenced in the Communications Decency Act ("CDA") (47 USC § 230). This is an easy distinction to make. The CDA is intended for large carriers of billions of websites such as Google, Yahoo and YouTube, not individual websites like Dirty World. ***That is the spirit and intent of the CDA.*** A negative review on Yelp! is not the same as calling someone a human trafficker rapist without evidence. If I post on a website a slander against someone that calls them a human trafficker without evidence than this is libel and falls under the five elements of slander (listed below) and, thus, I could be sued.

The five elements of slander in Arizona are as follows:

- A false statement was made concerning the plaintiff;
- The statement was defamatory;
- The statement was published to a third-party;
- The statement was made with actual malice, and
- The plaintiff suffered damage as a result of the statement.

(*Morris v. Warner*, 160 Ariz. 55, 62 (Ariz. Ct. App. 1988)).

This court sought from the beginning to fast track this case and, in the course of action, is now running roughshod over the discovery process. No adequate discovery has been completed, and the court is already dismissing Dirty World as a Defendant who, according to their Reply [Dkt. 38] believe that they are supposedly immune from liability under the Communications Decency Act ("CDA") (47 USC § 230) which allows for free speech and, notably, ***certain immunity*** from liability of the carrier for the abuse thereof.

However, a full and proper reading of the CDA (47 USC § 230) reveals that the CDA *is **not all-inclusive— it** has no effect on **criminal** law.*

As the CDA states:

**NO EFFECT ON CRIMINAL LAW**

**Nothing in this section shall be construed to impair the enforcement of section 223 or 231 of this title … or any other Federal criminal statute.**

(Communications Decency Act, 47 USC § 230(e)(1)) [emphasis added].

To put it concisely, according to the referenced Section 223, ***no one is allowed to use a telecommunications device to induce someone to harass a person***. **It is against the law.**

47 USC § 223 is the declared exception to the Communications Decency Act.

It states:

3

**PROHIBITED ACTS GENERALLY** <u>Whoever</u> in interstate or foreign communications by means of a telecommunications device knowingly **makes, creates, or solicits, and initiates the transmission of, any comment, request, suggestion, proposal, image … with intent to abuse, threaten, or harass another person** … [and] <u>**knowingly permits any telecommunications facility under his control to be used for any activity prohibited by paragraph (1) with the intent that it be used for such activity, shall be fined under title 18 or imprisoned not more than two years, or both.**</u>

(47 USC § 223(a)(1)(A)(2)). [emphasis added].

Yet, this is the very reason that Dirty World's website www.thedirty.com exists – to harass people.

Defendant Dirty World through a telecommunications device via the internet on the worldwide web through their website www.thedirty.com harassed, virtually stalked and defamed Plaintiff John Laake, thereby putting him in the zone of physical danger, greatly damaging his reputation and livelihood through their false highly egregious website. **<u>They specifically invite the public to post and comment upon their website www.thedirty.com their own supposed "dirt" about people</u>**. That may include news, gossip, accusations, photos, videos, or text, and users can comment on posts submitted by others. That is the whole reason the website thedirty.com exists. ***<u>Harassment and libel do not fall under the purview of protected free speech.</u>*** (47 USC § 223(a)(1)(A)(2); 28 USC §4101). Yet this court wants to give Dirty World a **free pass** to continue their illegal activities through an erroneous judgment rendered that was based upon an incomplete reading – or a failure to read – the Communications Decency Act in its entirety. (Communications Decency Act, 47 USC §230).

**<u>Plaintiff John Laake objects to this Court's order of April 14, 2020 dismissing Dirty World as a Defendant and hereby reserves his right to appeal this matter to the higher court on this issue, pursuant to Federal Rule of Appellate Procedure 3.1.  Dirty World ought *not*</u>**

4

**to have been dismissed as a Defendant from this case as provider and carrier of the services on www.thedirty.com whereupon the Plaintiff John Laake was libeled, harassed, virtually stalked and defamed.**

Furthermore, as far as the matter of whether or not Dirty World themselves defamed the Plaintiff, a subpoena that is fully complied with would reveal that. Plaintiff never got the complete answers he sought. Specifically, Plaintiff's Subpoena as issued to Godaddy, which this court allowed, sought the following: **The names, computer IP addresses and physical addresses [for purposes of process of service] of the person who posted the webpage which is on thedirty.com upon the Godaddy server: https://thedirty.com/city/chicago/john-winter-laake/#post-2287760 and the person who commented upon it, under the pseudonyms: The Dirty Army; and Psychic Vampire Slayer, respectively.** Godaddy's lawyer only provided the owner name and address of thedirty.com. None of the other aforesaid information was provided. Defendant's lawyer stated in his reply [Dkt. 38] that Godaddy does not have the requested information, but instead proffered that BRG Productions, who is the owner of Dirty World, would have that information. Plaintiff seeks to subpoena BRG Productions to uncover that information so that service of process of papers upon the parties may be rendered — whether or not that will turn out to include Dirty World themselves as the original poster—and also in their capacity as provider of the illegal harassment and virtual stalking service that libeled the Plaintiff.

In regards to *Jones v. Dirty World Ent. Recordings, LLC* that Defendant Dirty World made reference to: Plaintiff Laake contends herein that the 6th Circuit Court of the U.S. Court of Appeals verdict, in barring Ms. Jones's claims therein, ***erred*** and failed to take into consideration **the entire scope** of 47 USC § 230 wherein it specifically references the exception being Rule 47 USC § 223(a)(1)(A)(2) which states that there is <u>no exemption for criminal matters</u>: namely

5

utilizing a telecommunications device to harass someone and other Federal criminal matters. (*Jones v. Dirty World Ent. Recordings, LLC,* 755 F.3d 398, 402-03 (6th Cir. 2014); Rule 47 *Id.*). Furthermore, whoever … knowingly permits any telecommunications facility under his control to be used for any activity prohibited by paragraph (1) with the intent that it be used for such activity, shall be fined under title 18 or imprisoned not more than two years, or both.   (47 USC § 223(a)(1)(A)(2)).

In the case of *S.C. v. Dirty World, LLC*, which was also referenced by the Defendant Dirty World, Plaintiff Laake herein asserts that the court therein also failed to take into consideration the full scope of the CDA, wherein it takes exception to any service provider immunity in regards to **criminal activity**. (*See S.C. v. Dirty World, LLC* 2012 WL 3335284, (W.D.Mo. 2012)); *See* 47 USC § 230 *referencing* 47 USC § 223.

Plaintiff Laake respectfully disagrees with this court's assertion in its April 14, 2020 order wherein it states that:

> Further, the possibility exists that the posts were created by the website owner is not sufficient for a defamation claim to proceed against a host or platform website operator.

(Dkt. 40).

That theory also flies in the face of Rule 47 USC § 223(a)(1)(A)(2).  **No exemption is allowed under the CDA for any Federal criminal activity**.  (47 USC § 230(e)(1)).  Libel is against the law.  (28 U.S. Code § 4101).  A subpoena to BRG Productions, as owner of thedirty.com would uncover who posted as THE DIRTY ARMY.  It would reveal whether Dirty World is the original poster of the comment against the Plaintiff.  Nevertheless, even if Dirty World did not post or comment about Plaintiff Laake directly themselves, they are still responsible as the carrier of a website that they know harasses people, *i.e.* cyberbullying.  That is an exception

forbidden by the CDA, including any other illegal activity.   No one may use telephonic communications to harass someone.  That is what the webpage on thedirty.com regarding Plaintiff Laake accomplished—harassment and libel.  (*See* 47 USC § 230 *referencing* 47 USC § 223; notably 47 USC § 223(a)(1)(A)(2)).

An improper interpretation by this court of the CDA and what it does (and doesn't) allow under the law actually encourages and emboldens thedirty.com's bad illegal behavior and imperils the safety, livelihood and reputation of Plaintiff John Laake.  BRG Productions LLC owns thedirty.com and also shesahomewrecker.com.  Not only do they solicit third parties to post comments and "dirt" about other people, they also monitor its content very closely—even claiming ownership of the harassing webpage links that other people create on their site, through zealously-guarded copyrights that they go to court pertaining to.  They become and are the owners of the defamatory webpages posted on their website.  This clearly shows that they know what is going on with their websites and are highly involved in it, to the point of issuing subpoenas to Godaddy to uncover the authors of competitive websites who illegally "scrape" and distribute their copyrighted material. That makes them responsible for libel, not merely a provider for others to comment.  Even if Dirty World isn't the original poster of the content about the Plaintiff herein, they are still liable as owner of the content.  (*See* **Exhibit A -- BRG Productions' exhibits to their civil cover sheet in Case No. 2:19-mc-00017**).

A competitor website, Scumbagged.com authored an article called, *Nik Richie Exposed: TheDirty.com Engaging in Blackmail & Extortion (USA)*.  In it, they state the following:

> TheDirty.com … has been discovered engaging in a **pattern of corrupt activity**.  The highly illegal activity stems from accepting payments to remove user submitted posts from its website.  These payments derive from third party takedown websites commonly known as "reputation management" companies and is a crafty new-age digital form of blackmail & extortion.

7

The owner/operator of the controversial website is a man named Hooman Karamian whose online alias is Nik Richie.  Through TheDirty.com, Mr. Richie has been able to enrich himself and his constituents, while at the same time destroying the lives of any and all those around him both financially and emotionally.

In a special edition Scumbagged has discovered that websites like TheDirty.com engage in a pattern known as "donation" removals.  These donations derive from third party sites such as ReputationStars.com & RemoveTheDirty.com (there are others, but these are the most prominent).  Through these sites, the masses who have had articles featured on TheDirty.com reach out and inquire into having their damaging links removed.

The beginning of the extortion starts here …

(https://scumbagged.com/2018/02/10/nik-richie-exposed-thedirty-com-engaging-in-blackmail-extortion-usa/).  (*See* **Exhibit B**).

Extortion is criminal activity in violation of 18 U.S. Code § 875(d).

Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

(18 U.S. Code § 875(d)).

Nik Richie of Dirty World has a statement posted on thedirty.com at: https://thedirty.com/nik-richie/#post-2243980 wherein he says, in part, "I'm committed to making TheDirty.com a fiber of mainstream media **and no longer an institution of cyberbullying**." (***See*** **Exhibit C**.)  Right there, he **admits** that TheDirty.com is ***an institution of cyberbullying***. **Cyberbullying is harassment, which is strictly forbidden by the CDA**.  (*See* 47 USC § 230 *referencing* 47 USC § 223*).*  ***Dirty World has still not stopped cyberbullying and harassing people, as is evidenced by what transpired in this case with Plaintiff Laake***.

That's great that Nik Richie is starting to feel some remorse now; however, Dirty World owes Plaintiff Laake payment recompense for Plaintiff's sufferings. Dirty World and Defendant John Doe(s) are liable to the Plaintiff for his incurred damages including ongoing extreme mental and emotional distress, which is difficult to quantify.

## III.    <u>EXTREME EMOTIONAL DAMAGES</u>

In a landmark case in 1980, the California Supreme Court ruled that a plaintiff could recover for <u>emotional injuries alone</u>, even though there were no physical injuries. (*Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916 (1980). (*See* **Exhibit D**).

As stated in the case of *Young v. Bank of Am.,* "With respect to emotional distress damages, the amount 'is <u>not easily quantifiable</u> and is best left to the sound discretion of the jury.'" (*Young v. Bank of Am.*, 141 Cal.App.3d 108, 190 Cal.Rptr. 122 (1983)). [emphasis added].

The jurors must use the facts and their common sense to determine an award of <u>monetary damages for mental anguish and suffering</u>. (*Beagle v. Vasold*, 65 Cal.2d 166 (1966). [emphasis added].

These cases and many more prove that the infliction of emotional damages to Plaintiff by the Defendants, for all of the reasons enumerated herein as found within his Complaint and First Amended Complaint, is indeed recoverable and is a serious matter.

WHEREFORE, Plaintiff John Laake respectfully requests this court for relief and that it repeal and rescind its decision in the order of April 14, 2020 to reinstate Dirty World LLC as a Defendant in this case.

The Plaintiff requests any other relief the court deems appropriate.

Dated: April 19, 2020

John Laake, Pro Se Plaintiff
469 Grand Ave.
Aurora, IL 60506
Ph: (708) 352-0424
Email: wolfloki@yahoo.com

**CERTIFICATE OF SERVICE**

Plaintiff John Laake, Pro Se herein, hereby certifies that he sent a copy of the

Plaintiff's Motion For Relief From a Judgment / Reservation of Rights to the following address:

> David Gingras, Esq.
> Gingras Law Office, PLLC
> 4802 E. Ray Rd., #23-271
> Phoenix, AZ 85044

via U.S. Mail on April 19, 2020.

Dated:  April 19, 2020

John Laake
Pro Se Plaintiff
469 Grand Ave.
Aurora, IL 60506
Ph: (708) 352-0424
Email: wolfloki@yahoo.com

# Exhibit A

## Declaration of Murillo da Silva

I, Murillo da Silva, the undersigned, declare that I am over the age of eighteen, competent to testify, and further declare as follows:

1.  I am the, Content Piracy and Infringement Monitor for shesahomewrecker.com and  thedirty.com ("BRG Websites"). The BRG Websites are owned by BRG Productions, LLC ("BRG").

2.  I am authorized by BRG to make this declaration and do so upon my own personal knowledge.

3.  The BRG Websites enable users to anonymously upload comments, photographs, and video. In short, the BRG Websites are user-generated gossip tabloids which primarily target non-public figures and receive hundreds of thousands of visits each month.

4.  BRG has determined that the owners and/or operators of several other non-affiliated websites, presumably in an attempt to compete with the BRG Websites, have copied, duplicated, scraped, hijacked, or otherwise stolen content from the BRG Websites and posted the content on their own websites without permission from BRG.

5.  BRG is requesting that the Clerk issue the proposed subpoena accompanying this declaration which would order the persons and/or entities identified in Exhibit A attached hereto and in the accompanying application and exhibits attached thereto, to disclose the identities, including IP addresses, of the infringers operating the URLs set forth in Exhibit A attached hereto.

6.  The purpose for which this subpoena is sought is to obtain the identities of the individuals assigned to the URLs set forth in Exhibit A attached hereto who have reproduced and are offering for distribution BRG's copyrighted material without BRG's authorization.

This information sought to be discovered via the subpoena will only be used for the purposes of protecting the rights granted to BRG, under Title II of the Digital Millennium Copyright Act.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information or belief.

Executed this _18_ day of April, 2019.

_____
Murillo da Silva



**SCHERN RICHARDSON FINTER**

1640 S. Stapley Dr., Suite 132 • Mesa, AZ 85204 • srflawfirm.com • 480-632-1929

June 10, 2019

Godaddy.com
c/o Stat Agent Corporation
Service Co.
8825 N. 23rd Ave.
Ste. 100
Phoenix, AZ 85021

Domains by Proxy, LLC
c/o Stat Agent Corporation
Service Co.
8825 N. 23rd Ave.
Ste. 100
Phoenix, AZ 85021

Cloudflare
Attn. Legal Dept.
101 Townsend St.
San Francisco, CA 94107

|  |  |
|---|---|
| **Re:** | Copyright Infringement - DMCA § 512(c) Take Down Notice |
| **Claimant:** | BRG Productions, LLC – Legal copyright owner of the content contained on the website http://shesahomewrecker.com |
| **Infringing Website:** | **https://www.exposecheatersonline.com** |
| **Infringing Content:** | Still images and text located at the URLs listed in the Exhibit attached hereto, which content has been extracted or "scraped" from BRG Productions, LLC's website(s) and published on the Infringing Website |

Dear Legal / Copyright Department / DMCA Agent:

My law firm is the duly authorized representative of BRG Productions, LLC, ("client") with regard to its intellectual property matters and, in particular, to its copyrighted works.  You are the ISP and/or Registrant to the website **https://www.exposecheatersonline.com** ("Infringing Website").  Our investigation has confirmed that the Infringing Website has been illegally scrapping and distributing or contributing to the illegal scraping and distribution of copyrighted material owned by my client.

This letter is official notification under Section 512(c) of the Digital Millennium Copyright Act ("DMCA") that my client demands immediate removal of the infringing material located at the URLs listed on the Exhibit attached hereto and incorporated herein by this reference from your servers.  Additionally, you are to immediately notify the infringer of this Take Down Notice; notify them to cease any further posting of infringing material to your servers in the future; and take appropriate action against the infringer under your Abuse Policy/Terms of Service Agreement, including termination of repeat offenders under Section 512(i) of the DMCA.

**Identification of Copyrighted Work and Infringing Material**

**See Exhibit A attached hereto**

Pursuant to the DMCA, I certify that the information in this notification is accurate and, that I am authorized to act on behalf of the owner of the copyright(s) involved.  I have a good faith and reasonable belief that the infringing material was copied onto your servers without the permission of my client, its agent, or the law (including the doctrine of "fair use"). By providing this notice, BRG Productions, LLC is not waiving its right to engage in other enforcement activities, and reserves all rights to do so at any time.

You or the infringing party pay contact me directly to discuss the matter further. We look forward to your timely compliance.

Sincerely,

Michael A. Schern

**EXHIBIT A**

## Identification of Copyrighted Work

The original content, to which my client is the exclusive owner of all copyrights and privileges related thereto, can be found at: 

https://shesahomewrecker.com/alisha-white-konrad-collierville-tennessee/
https://shesahomewrecker.com/amanda-lynn-humphreys-toms-river-new-jersey/
https://shesahomewrecker.com/amber-nicole-humphrey-st-joseph-missouri/
https://shesahomewrecker.com/andreaz-gonzalez-san-manuel-arizona/
https://shesahomewrecker.com/andrew-ramos-daytona-beach-florida/
https://shesahomewrecker.com/andrew-ramos-daytona-beach-florida/
https://shesahomewrecker.com/bonnie-contreras-san-antonio-texas/
https://shesahomewrecker.com/caleigh-olsen-aurelia-iowa/
https://shesahomewrecker.com/chelsea-abasta-pheonix-arizona/
https://shesahomewrecker.com/christina-noelle-clay-wetumpka-alabama/
https://shesahomewrecker.com/corlis-j-simmons-atlanta-georgia/
https://shesahomewrecker.com/daisy-clare-hayes-newcastle-australia/
https://shesahomewrecker.com/dawn-wallen-newberry-south-carolina/
https://shesahomewrecker.com/erika-hart-fontana-california-3/
https://shesahomewrecker.com/erika-hart-fontana-california-3/
https://shesahomewrecker.com/erin-gerity-corwin-daytona-beach/
https://shesahomewrecker.com/andrew-ramos-daytona-beach-florida/
https://shesahomewrecker.com/giselle-espinales-miami-florida/
https://shesahomewrecker.com/giselle-espinales-miami-florida/
https://shesahomewrecker.com/heather-davis-shelbyville-illinois/
https://shesahomewrecker.com/heidi-nicole-andrews-ozark-alabama/
https://shesahomewrecker.com/jessica-four-bear-eagle-butte-south-dakota/
https://shesahomewrecker.com/jessica-louise-shewan-alness-scotland/
https://shesahomewrecker.com/jessica-louise-shewan-alness-scotland/
https://shesahomewrecker.com/jewel-mcdaniel-suffolk-virginia/
https://shesahomewrecker.com/julia-mcneal-nelson-wasilla-arkansas/
https://shesahomewrecker.com/kami-matthews-mohon-macon-georgia/
https://shesahomewrecker.com/katie-hausmann-belleville-missouri/
https://shesahomewrecker.com/keith-dauzet-las-vegas-nevada/
https://shesahomewrecker.com/kelsey-labadie-clinton-township-michigan/
https://shesahomewrecker.com/kendra-riley-princeton-indiana/
https://shesahomewrecker.com/laura-favela-el-paso-texas/
https://shesahomewrecker.com/jessica-louise-shewan-alness-scotland/
https://shesahomewrecker.com/lisa-a-stanley-arkadelphia-arkansas/
https://shesahomewrecker.com/liz-b-green-sherman-texas/
https://shesahomewrecker.com/loren-mcmahon-san-bernardino-california/
https://shesahomewrecker.com/maira-cortez-knoxville-tennessee/
https://shesahomewrecker.com/marcia-patricia-espinoza-escobar-nogales-arizona/
https://shesahomewrecker.com/maria-dawson-copes-boston-massachusetts/
https://shesahomewrecker.com/marie-tolentino-devanadera-laguna-philippines/
https://shesahomewrecker.com/marina-leyba-jal-new-mexico/
https://shesahomewrecker.com/monica-michelle-herrera-moreno-valley-california/
https://shesahomewrecker.com/nancy-salazar-maceda-middletown-new-york/
https://shesahomewrecker.com/nicole-bauer-flower-mound-texas/
https://shesahomewrecker.com/nicole-burns-belfast-ireland/
https://shesahomewrecker.com/randy-mazin-saugus-massachusetts/
https://shesahomewrecker.com/sandra-roberts-ridgeland-south-carolina/
https://shesahomewrecker.com/selena-franco-san-jose-california

## Identification of Infringing Material

The unauthorized and infringing material can be found at to following URLs:

https://exposecheatersonline.com/alisha-white-konrad-collierville-tennessee/
https://exposecheatersonline.com/amanda-lynn-humphreys-toms-river-new-jersey/
https://exposecheatersonline.com/amber-nicole-humphrey-st-joseph-missouri/
https://exposecheatersonline.com/andreaz-gonzalez-san-manuel-arizona/
https://exposecheatersonline.com/andrew-ramos-daytona-beach-fl/
https://exposecheatersonline.com/andrew-ramos-daytona-beach-florida/
https://exposecheatersonline.com/bonnie-contreras-san-antonio-texas/
https://exposecheatersonline.com/caleigh-olsen-aurelia-iowa/
https://exposecheatersonline.com/chelsea-abasta-pheonix-arizona/
https://exposecheatersonline.com/christina-noelle-clay-wetumpka-alabama/
https://exposecheatersonline.com/corlis-j-simmons-atlanta-georgia/
https://exposecheatersonline.com/daisy-clare-hayes-newcastle-australia/
https://exposecheatersonline.com/dawn-wallen-newberry-south-carolina/
https://exposecheatersonline.com/erika-hart-fontana-california/
https://exposecheatersonline.com/erika-hart-fontana-california-2/
https://exposecheatersonline.com/erin-rose-gerity-corwin-daytona-beach-florida-2/
https://exposecheatersonline.com/gaige-hanrahan-daytona-beach-florida/
https://exposecheatersonline.com/giselle-espinales-miami-beach-florida/
https://exposecheatersonline.com/giselle-espinales-miami-florida/
https://exposecheatersonline.com/heather-davis-shelbyville-illinois/
https://exposecheatersonline.com/heidi-nicole-andrews-ozark-alabama/
https://exposecheatersonline.com/jessica-four-bear-eagle-butte-south-dakota/
https://exposecheatersonline.com/jessica-louise-shewan-alness-scotland/
https://exposecheatersonline.com/jessica-louise-shewan-ross-shire-scotland/
https://exposecheatersonline.com/jewel-mcdaniel-suffolk-virginia/
https://exposecheatersonline.com/julia-mcneal-nelson-wasilla-arkansas/
https://exposecheatersonline.com/kami-matthews-mohon-macon-georgia/
https://exposecheatersonline.com/katie-hausmann-belleville-missouri/
https://exposecheatersonline.com/keith-dauzet-las-vegas-nevada/
https://exposecheatersonline.com/kelsey-labadie-clinton-township-michigan/
https://exposecheatersonline.com/kendra-riley-princeton-indiana/
https://exposecheatersonline.com/laura-favela-el-paso-texas/
https://exposecheatersonline.com/lieing-cheater/
https://exposecheatersonline.com/lisa-a-stanley-arkadelphia-arkansas/
https://exposecheatersonline.com/liz-b-green-sherman-texas/
https://exposecheatersonline.com/loren-mcmahon-san-bernardino-california/
https://exposecheatersonline.com/maira-cortez-knoxville-tennessee/
https://exposecheatersonline.com/marcia-patricia-espinoza-escobar-nogales-arizona/
https://exposecheatersonline.com/maria-dawson-copes-boston-massachusetts/
https://exposecheatersonline.com/marie-tolentino-devanadera-laguna-philippines/
https://exposecheatersonline.com/marina-leyba-jal-new-mexico/
https://exposecheatersonline.com/monica-michelle-herrera-moreno-valley-california/
https://exposecheatersonline.com/nancy-salazar-maceda-middletown-new-york/
https://exposecheatersonline.com/nicole-bauer-flower-mound-texas/
https://exposecheatersonline.com/nicole-burns-belfast-ireland/
https://exposecheatersonline.com/randy-mazin-saugus-massachusetts/
https://exposecheatersonline.com/sandra-roberts-ridgeland-south-carolina/
https://exposecheatersonline.com/selena-franco-san-jose-california/

**Exhibit B**

GOT SCUM? | **EXPOSE THEM...**   **CLICK HERE**   



# Nik Richie Exposed: TheDirty.com Engaging in Blackmail & Extortion (USA)

February 10, 2018



*TheDirty.com accepts cash payouts to remove links in a hidden extortion scheme.*

[TheDirty.com](), an extremely popular website that is almost identical in comparison to Scumbagged.com, has been discovered engaging in a **pattern of corrupt activity**.  The highly illegal activity stems from accepting payments to remove user submitted posts from its website.  These payments derive from third party takedown websites commonly known as "reputation management" companies and is a crafty new-age <u>digital form of blackmail & extortion</u>.

The owner/operator of the controversial website is a man named Hooman Karamian whose online alias is Nik Richie.  Through TheDirty.com, Mr. Richie has been able to enrich himself and his constituents, while at the same time destroying the lives of any and all those around him both <u>financially and emotionally</u>.

In a special edition Scumbagged has discovered that websites like [TheDirty.com]() engage in a pattern known as "donation" removals.  These donations derive from third party sites such as [ReputationStars.com]() & [RemoveTheDirty.com]() (there are others, but these are the most prominent).  Through these sites, the masses who have had articles featured on TheDirty.com reach out and inquire into having their damaging links removed.

**The beginning of the extortion starts here...**   `10111101011001011100101110101011000101011011111101000111`

*GOT SCUM?* | **EXPOSE THEM...**



published article from TheDirty.com without (in most
cases) a court order.  When sending an email or
reaching out to TheDirty tip line, no options are afforded
to those that have been publicly defamed.  According to
TheDirty.com's removal policy, the only instances where
a court order is not required to remove a user
submitted post, is in the event of revenge porn or any
post that contains violation of law.

*Extortion and blackmail
practices exposed.*

**Related Article:**  ReputationStars.com Engaging in Extortion Practices

What TheDirty.com doesn't broadcast is the fact that they also allow removals
via another method.  The reason that this information isn't broadcasted is
because it is truly a "Dirty" scheme and *highly illegal*.  One that involves Nik
Richie's constituents creating platforms where the helpless spend money
through an outside reputation management company.  The wounded individual
contacts the company regarding a takedown and a quote is then given to them
for the removal.  They then are presented with an option to pay in order to have
the link on TheDirty.com removed.  Once they agree, the "reputation
management" company then contacts Nik Richie directly and provides him with
a "donation" amount.  The money is then sent in secret to Nik Richie who then
removes the link.  *Scumbags...*

**COBRA Says:**  *Rumor has it that there are in excess of 200+ links that have
been removed from TheDirty.com in the past 2 years, and I would be willing to
bet that **almost all have come from ReputationStars &
RemoveTheDirty.com.***

This is actually not a "donation" but in all actuality a blackmail and extortion
payoff.  The defamed and publicly ostracized individual is being forced to pay
the quote to the reputation management company – who then transfers, behind
the scenes, large sums of cash to have the link removed.  In some cases the
amounts **total more than $10,000!**

Nik Richie Exposed: TheDirty.com Engaging in Blackmail & Extortion ...          https://scumbagged.com/2018/02/10/nik-richie-exposed-thedirty-com-en...

*GOT SCUM?* | **EXPOSE THEM...**   **CLICK HERE**                    ⊠

*ReputationStars.com provides a platform that makes the extortion possible.*

**Fun Fact:** *Scumbagged.com has been approached with **no less than $10,300** from these so called "donations" from reputation management companies to have links removed.  We have taken a personal stance and have decided to not engage in this illegal and illicit behavior.*

ReputationStars.com & RemoveTheDirty.com – which are both ranked high on Google's search results via paid advertisements when searching for "Remove a link from TheDirty.com" both make direct cash payments to Nik Richie and The Dirty LLC. for removal requests.  This is an illegal practice and one that has gone unnoticed and unknown for years.

TheDirty.com and Nik Richie also intentionally allow blatantly false and defamatory content – even when they know the information isn't accurate and the user provides verified documentation to support their takedown request.  TheDirty's response **time and time again** has been that it will only remove a link if it violates their ToS, the law or they are presented with a court order.  This is what they want you to think, but it's a bold faced lie.

*Nik Richie, owner of TheDirty.com*

The screenshots below document how one of the most popular extortion gateways, ReptuationStars.com blatantly operates.  They also deal with other sites besides TheDirty.com, those other sites are Shesahomewrecker.com, Reportyourex.com, Myex.com & many many more.

**See the 3 emails below of ReputationStars attempting to make a monetary donation for a take down:**

*GOT SCUM?* | **EXPOSE THEM...**   **CLICK HERE**

☒

**The Bottom Line:**  Websites like Scumbagged & TheDirty are extremely controversial due to the highly sensitive nature and exposure level of user submissions.  However, in order to operate such a site within the legalities of the law you **absolutely cannot** receive payments in the form of takedowns.  TheDirty and sites that are providing cash payouts are in violation of Federal Law.

**SCUMBAGGED Tip:**  It would be advisable for Nik Richie, TheDirty and any other site that is consistently receiving payouts to cease immediately.  This is a blatant form of blackmail and extortion and will result in a Federal Felony Case being levied.  You've been warned...

**Subject:** Removal
**From:** "Pierre Zarokian" <pierre@reputationstars.com>
**Date:** Wed, February 7, 2018 11:52 am
**To:** scum@scumbagged.com
**Priority:** Normal
**Status:** answered
**Options:** View Full Header | Print | Download this as a file | View as HTML

We have a client with a negative post on your site. Is it possible to get
it removed? we are willing to make a donation.


Thanks,
Pierre Zarokian
CEO
Reputation Stars – www.reputationstars.com

1 of 3

**Subject:** Re: Removal
**From:** "Pierre Zarokian" <pierre@reputationstars.com>
**Date:** Wed, February 7, 2018 11:25 pm
**To:** "Scumbagged.com" <scum@scumbagged.com>
**Priority:** Normal
**Status:** answered
**Options:** View Full Header | Print | Download this as a file | View as HTML

As a matter of fact this is how most these sites operate. Some do not take
direct donations and work through middle men, but some do take direct
donations. Since there are no laws against it in the USA, no one has gotten
in trouble for it.
There is case law with Yelp from couple of years ago that judge decided
that Yelp could charge fees to filter or unfilter reviews, as there are no
current laws against it.

I only know 2 sites that have gotten in trouble, but not for charging fees,
but because they were Revenge Porn websites and then also charging fees for
removal. This is much different scenario than complaint websites.

I deal with many of these sites, so it is normal operation for us and also
many other reputation management companies. I think that most of them do
not want to offer direct removals to clients, because they are afraid
people may sue them for extortion. Going through a Reputation Management
company, it makes them feel much safer.

As long as these posts are posted or submitted by 3rd parties, you can
legally charge a nominal fee to review the claims and remove them. You
should not be the one that posted them and you should not also initiate
contact with anyone offering removal for a fee. That would then be
considered extortion.

So let me know if you would like to work with us.

2 of 3

**Subject:** Re: Removal
**From:** "Pierre Zarokian" <pierre@reputationstars.com>
**Date:** Thu, February 8, 2018 10:56 pm
**To:** "Scumbagged.com" <scum@scumbagged.com>
**Priority:** Normal
**Options:** View Full Header | Print | Download this as a file | View as HTML

1)
http://scumbagged.com/2017/08/11/james-learning-hard-way-hrdy-middleburg-heights-ohio/

2) Donation $300

3) We remove lot's of content from many sites by paying them fees, but due
to confidentiality, I cannot tell you which sites.

Thanks,
Pierre Zarokian
CEO
Reputation Stars - www.reputationstars.com

3 of 3

# Exhibit C

🔒 thedirty.com



Search for a friend

🏷 Nik Richie

*"For ten years I created a massive following giving people the opportunity to voice and submit as a third party. It wasn't until I watched Melania Trump's speech and her stance on cyberbullying. I asked myself as a father am I doing what's right for my family or this country. I looked in the mirror and had my wake up call. Am I part of the problem or solution? I am the problem. My website was built on humor but it guided down a path of hate. That's not me or how I want my legacy to end. My passion has always been to break stories that shift our culture for the better i.e. Anthony Weiner. My intention was never to have people bully one another. I truly believe if Melania Trump can change me, we can all be better. I'm committed to making TheDirty.com a fiber of mainstream media and no longer an institution of cyberbullying."*



# Exhibit D

**General Practice**

# Maximizing Damages for Emotional Distress

By Allen P. Wilkinson & Reza Torkzadeh

In most – if not all – personal injury cases, the complaint will allege that the plaintiff suffered "severe emotional distress" and "mental anguish" as a result of the negligence or other wrongful conduct of the defendant. In most personal injury cases damages for pain and suffering (non-economic damages) will be greater – often significantly so – than economic damages for such things as medical bills and lost wages. The sole exception, of course, is in medical malpractice cases, where non-economic damages are statutorily limited to $250,000. (Code Civ. Proc. § 3333.2(b).)



Allen P. Wilkinson was admitted to the California State Bar in 1979 and worked for Melvin Belli for 10 years. Allen practiced tort law for 25 years, until focusing his attention on writing extensively for the legal profession as well as the lay public. apwlegalwriter@aol.com



Reza Torkzadeh is a Los Angeles-based personal injury lawyer whose practice is devoted to handling serious personal injury and wrongful death cases throughout California. He is a partner in Slaughter & Slaughter and a member of CAOC, and was named a 2010 Rising Star by Super Lawyers. www.rezat.com

Together they are the authors of *Accidents Happen But Who's Going to Pay the Bills? A Consumer's Guide to the California Personal Injury and Wrongful Death System* (Pigeon Lake Publishing 2010).

Severe emotional distress and mental anguish can exist even where the physical injuries are slight. In many cases the psychological damages are far greater in the long run than the physical injuries. For instance, a father and his 16-year-old daughter went out for a drive, with the girl's 15-year-old cousin in the back seat. They were involved in a horrific automobile accident, in which the father and his daughter, who were sitting in the front seat, were seriously injured. The 15-year-old cousin, however, who was sitting in the back seat, was uninjured except for some bumps and bruises. The newspaper called her the "miracle child."

Fast forward six months: The father and daughter were recovering nicely from their injuries and starting to lead normal lives again. The 15-year-old cousin, however, was not doing so well. Shortly after the accident, the girl began having a deep fear of riding in an automobile. She tried taking the bus but even that caused her severe anxiety. Ultimately the girl was unable to ride in any kind of vehicle and could travel no farther than her feet could take her. But even that became too much for her and she developed a fear of leaving the house, a condition known as agoraphobia.

So while the critically injured father and daughter were making an excellent recovery from their injuries, the 15-year-old "miracle child" could barely leave her house, even for short distances. She was unable to attend school or engage in any of the activities she used to enjoy. To overcome her fears, the girl will require intensive and possibly lengthy psychotherapy, as well as psychoactive drugs. This case should serve as a warning to plaintiffs' lawyers not to settle a case too quickly but wait until a sufficient period has passed so that all of the victim's injuries – physical as well as emotional – have manifested themselves.

In the landmark decision of *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, the California Supreme Court ruled that a plaintiff could recover for "serious" emotional injuries without having suffered any physical injury. The high court stated that serious emotional distress "'may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case.'" (*Molien v. Kaiser Foundation Hospitals, supra,* 27 Cal.3d at pp. 927-928, quoting *Rodrigues v. State* (1970) 52 Haw. 156, 173.)

## Is it recoverable?

Serious, or severe, emotional distress means emotional distress of such substantial quantity or enduring quality that no reasonable person in a civilized society should be expected to endure it. It may consist of all highly unpleasant mental reactions such as fright, grief, horror, shame, loss of enjoyment of life, humiliation, nervousness, anxiety, embarrassment, anger, chagrin, disappointment, worry, indignity, or nausea, as well as physical suffering. The intensity and the duration of the distress are factors to be considered in determining its severity. (*Hailey v. California Physicians' Service* (2007) 158 Cal.App.4th 452; *Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762-763.)

Allegations that the wrongful conduct of the defendant caused severe emotional distress, resulting in depression, anxiety

and physical illness, including vomiting, stomach cramps, and diarrhea demonstrate that the plaintiff's emotional distress was neither fleeting nor insignificant. (*Hailey v. California Physicians' Service, supra*, 158 Cal.App.4th 452.)

## In what amounts?

As for the amount of damages that are recoverable for emotional distress, the Supreme Court has stated that general compensatory damages for emotional distress are not pecuniarily measurable, defy a fixed rule of quantification, and are awarded without proof of pecuniary loss. The court has also noted that, in seeking to place a dollar value on a plaintiff's mental and emotional injuries, there is little in legal authority to guide it, because it has traditionally been left to the sound discretion of the trier of fact to assess the degree of harm suffered and to fix a monetary amount as just compensation therefore. (*Walnut Creek Manor v. Fair Employment* (1991) 54 Cal.3d 245, 263.)

Of the difficulty of putting a price on emotional distress and mental anguish, the Supreme Court stated that "[o]ne of the most difficult tasks imposed upon a jury in deciding a case involving personal injuries is to determine the amount of money the plaintiff is to be awarded as compensation for pain and suffering." As the court noted, "[n]o method is available to the jury by which it can objectively evaluate such damages, and no witness may express his subjective opinion on the matter." Rather, "[i]n a very real sense, the jury is asked to evaluate in terms of money a detriment for which monetary compensation cannot be ascertained with any demonstrable accuracy." As the court explained, "'Translating pain and anguish into dollars can, at best, be only an arbitrary allowance, and not a process of measurement, and consequently the judge can, in his instructions, give the jury no standard to go by; he can only tell them to allow such amount as in their discretion they may consider reasonable.... The chief reliance for reaching reasonable results in attempting to value suffering in terms of money must be the restraint and common sense of the jury.'" (*Beagle v. Vasold* (1966) 65 Cal.2d 166, 172.)

It has long been established that lay witnesses can testify to the plaintiff's

involuntary declarations and expressions of pain. (See, e.g., *Green v. Pacific Lumber Co.* (1900) 130 Cal. 435, 440-441.) The plaintiff's own testimony and the testimony of the plaintiff's spouse, children, parents, close friends, and co-workers commonly establish non-economic damages, especially in ordinary cases that do not involve severe and crippling psychic damage. Thus, while expert testimony may undoubtedly be helpful in many cases, it is not necessary to establish a basis for an award for pain; lay testimony suffices. (*Capelouto v. Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889.)

However, where the plaintiff's pain and suffering is especially severe, the testimony of a psychologist, psychiatrist, or other mental health professional may be extremely helpful in getting the jury to understand the extent of the plaintiff's pain and suffering and its financial and emotional toll on the plaintiff and result in a larger award.



## CREATE A WINNING SETTLEMENT STRATEGY

**Work With The Plaintiff-Only Pros**

*We've got the right team to tackle all of your settlement related issues.*

**Structured Settlements - Medicare Set Asides
Lien Resolution - Government Benefit Protection
Trust Planning & Administration**

Our team provides the expertise you need, while saving you both time and money in the settlement process. We help you to stay focused on litigation by removing the administrative and time burden associated with various case related issues. Call us to receive the all-star treatment and create a winning settlement strategy for you and your client.

**John Vaclavik**
916-591-3539
jvaclavik@tjsg.com
www.tjsg.com

**James Street** GROUP
*Settlement Planners*

## Voir dire

The time to start building the case for a monetary award that the injured plaintiff should receive for pain and suffering and other non-economic damages is during voir dire. Many people are skeptical of claims for pain and suffering and may believe the plaintiff is exaggerating or even completely fabricating their mental anguish just to get a larger award. Suppose your client is suffering from clinical depression as a result of the defendant's negligence, and spends the greater part of the day lying in bed, feeling hopeless and helpless. The plaintiff's counsel would want to inquire of a prospective jurors whether they believe a person who has no energy suffers from a real mental disorder or is a malingerer who could be doing anything she wanted if she really put her mind to it and is just trying to take advantage of the system.

## The trial

Once the trial begins, you should bring up the issues of emotional distress and pain and suffering during the opening statement. Following opening statement, you should address non-economic damages during the case in chief. In cases where the emotional distress is extreme, you should present expert mental health testimony to establish the reality of the pain and suffering, its intensity and duration, the costs of psychotherapy, medications, and other expenses, the plaintiff's loss of enjoyment of life, the likelihood of a complete recovery with proper treatment, and the likelihood of an incomplete recovery or relapse.

The psychiatrist or psychologist can determine the type and extent of the plaintiff's emotional injuries, the types of treatment for it, the length of time and amount of therapy that the client will need to get back to functioning on a reasonably normal level, and the cost of therapy and any psychoactive medication. Every person is unique. Some may be able to bounce back to normal functioning in a relatively short period of time, while others may require years of intensive treatment.

## Experts

Emotional distress and mental anguish can be made more real to and understandable by a jury if a psychiatrist or psychologist explains to the jury in language they can understand the clinical disorders from which the victim suffers. For instance, if the victim of a violent fiery motor vehicle accident suffers from terrifying nightmares, is frightened by sudden noises, etc., a mental health professional can evaluate the patient and testify before the jury that the victim is suffering from the specific mental disorder of posttraumatic stress disorder, rather than some vague "emotional distress." The mental health professional can also testify as to the course and treatment of the mental disorder, the type and length of treatment involved, its cost, as well as its daily effect upon the client.

## Making it real

Emotional distress and mental anguish include the inability to engage in pleasurable activities that the plaintiff was able to engage in before the incident. For instance, if the plaintiff worked during the week and was a "weekend warrior" who participated in such things as playing golf or tennis, going mountain-biking, or swimming with the children, all of these should be introduced into evidence at the trial to establish the extent of the plaintiff's loss of enjoyment of life caused by they physical injuries. A father who has lost his arm due to another person's negligence and is no longer able to play catch with his seven-year-old son — an activity they engaged in every night when the father came home from work — suffers a real loss of enjoyment of life. A woman whose hand has been crushed in an accident, preventing her from engaging in her passion of knitting, deserves to be fairly compensated for this.

Any and all pleasurable activities and pastimes the plaintiff is no longer able to do or take part in because of the defendant's negligence should be presented to the jury. In the last two decades or so, the science of mental disorders has advanced greatly, and now it is possible to put a name on many manifestations of "emotional suffering" and "mental anguish." The diagnostic mental health care "Bible" for defining emotional and mental disorders is the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition Text Revision (DSM-IV-TR).

This manual was originally published in 2000, and a completely new and revised Fifth Edition is due out in 2012. Every personal injury lawyer should have this book.

## Common conditions

Here are some common DSM-IV-TR psychological conditions (i.e., emotional distress) that can arise from being the victim of another person's negligence:

- Posttraumatic stress disorder (PTSD) arising from, for example, a violent automobile or bus crash or a blazing fire that jeopardized the victim's life. While PTSD is often associated with a person who was in military combat ("shell shock" after World War I, "battle fatigue" after World War II, and PTSD after the Vietnam war), the disorder applies to any extreme traumatic stressor involving direct personal experience that involves actual or threatened death or serious injury, or other threat to one's physical integrity, such as a severe automobile accident.

- Major depression: The victim may become depressed because of being unable to do all the things they did before the incident, feel sluggish and fatigued most of the time, unable to gain pleasure out of things they once enjoyed (anhedonia), and may even become suicidal. Antidepressant medication and psychotherapy will be necessary to improve the plaintiff's mood. In some cases — especially where the plaintiff poses a threat of suicide — hospitalization and around-the-clock supervision may be required.

- Anxiety disorder: The victim may be on "high alert" for any type of accident or injury and be in a constant state of worry and anticipation that something bad is going to happen.

- Panic disorder: The victim may suffer panic attacks as a result of the injury. Panic attacks are a severe mental and physical condition in which the victim's heart speeds up, is unable to breathe normally, may feel a tightening or pain in the chest, and may believe that they are having a heart attack, is going to

faint, lose control, "go crazy," or embarrass themselves. Panic attacks, which seem to "come out of the blue," put the person in an extreme state of fear. Panic disorder may stop the victim from enjoying activities and, as in the case illustration at the beginning of this article, the victim may become housebound (agoraphobic).

> You may use the "per diem" argument, in which you ask for a daily sum for the emotional suffering the injured plaintiff must endure for the rest of their life.

Having a psychologist or psychiatrist testify using DSM-IV-TR criteria makes the mental injury and emotional distress much more real and believable to the jury. Skeptical jurors may change their mind about mental and psychological injuries when the expert mental health witness is holding the thick book while testifying. The defense, in turn, may argue that the plaintiff is simply a malingerer who is trying to take advantage of the legal system. Qualified mental health care providers and forensic psychiatrists and psychologists testifying on behalf of the plaintiff can explain to the jury the methods that are used to assess a person's mental state and reach an objective diagnosis, and can discuss the types and length of therapies the injured person will have to get better to return to their old self. In most cases of "severe emotional distress" and a diagnosable mental disorder, the injured party often will never return to being the person they were before the tortious incident.

The difference between a client testifying about their own emotional suffering as a result of the defendant's wrongful conduct and a psychologist or psychiatrist testifying as to the emotional and mental impact the incident had on the plaintiff's mental well-being can result in tens, even hundreds of thousands of dollars or more. Jurors are impressed by an experienced

psychiatrist's or psychologist's educational background and clinical experience treating victims of another person's misconduct, and the mental health expert can testify in terms the jury will understand of the mental health diagnosis the plaintiff suffers from as a result of the incident, how it has affected their life.

The mental health care professional can testify to a reasonable certainty, based upon years of training and practicing and evaluation of the injured plaintiff, regarding the injured plaintiff's mental distress, how long it will take to treat the injury, and whether there will be lasting consequences of the emotional disorder.

However, no witness, including expert witnesses such as psychiatrist and psychologists, as well as forensic economists and accountants, can testify as to a dollar amount the plaintiff's non-economic damages will amount to over a lifetime. While the judge can instruct the jury on the right of the plaintiff to be compensated for pain and suffering and other non-economic damages, the judge cannot give the jury an instruction on the range of amounts that the plaintiff is entitled to recover for non-economic damages. Amounts from other cases cannot be brought up at trial to help to establish the monetary amount of the plaintiff's pain and suffering. The award for emotional harm suffered by plaintiff is not easily quantifiable and is left to the sound discretion of the jury. (*Young v. Bank of America Nat'l Trust & Sav. Ass'n* (1983) 141 Cal.App.3d 108, 115.)

It is said that the jurors are best situated to determine and to what extent the defendant's conduct caused the emotional distress, by referring to their own experience. A jury is more likely to believe the testimony of a psychologist or psychiatrist who has treated the plaintiff, as it may think a plaintiff's testimony to the extent of their pain and suffering is exaggerated or fabricated.

The appropriate compensation for mental anguish cannot be determined by an objective standard capable of consistent and predictable application. In a very real sense, the jury is asked to evaluate in terms of money a detriment for which monetary compensation cannot be ascertained with any demonstrable accuracy. (*Balmoral Hotel Tenants Ass'n v. Lee* (1990) 226 Cal.App.3d 686.)

## Closing argument

During closing arguments, you may not argue the "golden rule" – how much would a juror think would be fair and appropriate if the juror would charge to undergo equivalent pain and suffering? – but may use the "per diem" argument, in which you ask for a daily sum for the emotional suffering the injured plaintiff must endure for the rest of their life. (*Beagle v. Vasold* (1966) 65 Cal.2d 166, at pp. 181-182; *Brokopp v. Ford Motor Co.* (1977) 71 Cal.App.3d 841, 860; *Loth v. Truck-A-Way Corp.* (1998) 60 Cal.App.4th 757.)

There is no definite or fixed standard or method of calculation prescribed by law by which to fix reasonable compensation for pain and suffering. The jurors must use their own judgment to decide a reasonable amount based on the evidence and their common sense. In making the award for pain and suffering, the jury must use its authority with calm and reasonable judgment, and the damages the jury fixes must be just and reasonable in the light of the evidence. The award for non-economic damages should not be reduced to present cash value. (*Loth v. Truck-A-Way Corp.*, *supra,* 60 Cal.App.4th at p. 769.)

## Appeal

The amount of damages is a fact question, first committed to the discretion of the jury and next to the discretion of the trial judge on a motion for new trial. They see and hear the witnesses and frequently see the injury and impairment that has resulted. As a result, all presumptions are in favor of the decision of the trial court. An appellate court may not disturb an award of non-economic damages unless the amount is, at first blush, so disproportionate to the injuries suffered that the result reached may be said to shock the conscience and suggests passion, prejudice or corruption on the part of the jury. If the verdict did not shock the sense of justice in light of the victim's life expectancy, severity of injuries and suffering, there is no basis upon which an appellate court, as a matter of law, can disagree. (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 61; *Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 506-508.) ∎